IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

VICTORIA DRUDING, et al.,

    Plaintiffs,

  v.

CARE ALTERNATIVES, Inc.,

    Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 08-2126(JBS/AMD)

**OPINION**

APPEARANCES:

Ross Begelman, Esq.
BEGELMAN & ORLOW, P.C.
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034
 Attorney for Plaintiffs Victoria Druding, Barbara Bain,
 Linda Coleman, and Ronni O'Brien

Craig Carpenito, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
 Attorney for Defendant Care Alternatives, Inc.


**SIMANDLE, Chief Judge:**

**I. INTRODUCTION**

 This matter comes before the Court on Defendant Care
Alternative, Inc.'s motion to dismiss the first amended
complaint. [Docket Item 27.] Plaintiff-Relators are former
employees of Defendant, a provider of end-of-life hospice care
throughout New Jersey. They bring claims on behalf of the United

States and the State of New Jersey under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the New Jersey False Claims Act ("NJFCA"), N.J.S.A. § 2A:32C-1 et seq., alleging that Defendant routinely fraudulently billed Medicare and Medicaid by admitting and recertifying inappropriate patients for hospice care and by engaging in conduct that violates the Stark Act and the Anti-Kickback Statute. Defendant now moves to dismiss the First Amended Complaint for failure to state a claim on the grounds that Plaintiff-Relators have not alleged any cognizable theory of fraud and that Plaintiff-Relators have failed to plead violations of the federal and New Jersey FCA with particularity with respect to any of the courses of conduct alleged. For the reasons discussed below, the Court will grant in part and deny in part Defendant's motion to dismiss the First Amended Complaint.

## II.   BACKGROUND[1]

Defendant is a for-profit provider of end-of-life hospice care throughout New Jersey. (Am. Compl. ¶ 2.) Defendant organizes the state into five regions for administrative purposes; Plaintiff-Relators were members of the Southwest team

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true the facts set forth in Plaintiff-Relator's First Amended Complaint, together with the exhibits attached to the Complaint, documents explicitly relied upon in the Complaint, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

2

when they were employed by Defendant in the positions of
Regional Manager, Chaplain, Registered Nurse Case Manager, and
Community Liaison. (Id. ¶¶ 1, 3.)

In essence, Plaintiff-Relators allege a concerted effort by
Defendant to bring in patients to its residential facilities who
were not actually eligible for hospice care coverage under
Medicare. Defendant purportedly directed its staff to
"manipulate and/or change" patients' diagnoses to qualify for
hospice care under Medicare's Hospice Eligibility Guidelines.
(Id. ¶¶ 12, 27.) Staff were directed to re-write medical records
in order to meet the hospice criteria and re-create "missing"
documents. (Id. ¶¶ 18, 22, 26, 27.) The Regional Manager was
instructed to review patient records and identify symptoms that
would justify the patient's recertification for a longer hospice
stay. (Id. ¶ 29.) Plaintiff-Relators identify 15 patients whose
symptoms allegedly did not match Medicare's criteria for hospice
care. (Id. ¶ 25.) Plaintiff-Relators aver that nurses were told,
inter alia, to "back date the paperwork" and to change diagnoses
to keep patients on the program. (Id.)

Plaintiff-Relators further allege that Defendant engaged in
an aggressive marketing campaign to bring in more patients. (Id.
¶¶ 4, 23.) Defendant had an "unlimited budget" to spend on
meals, gifts, and facility perks for physicians, administrators,
directors, and social workers to induce referrals. (Id. ¶¶ 20,

43.) Defendant allegedly promised community liaisons "elevated
levels of care, extra aids, full time nurses, reimbursement
[sic] for non-hospice specific needs" and gifts to "bring in the
bodies." (Id. ¶¶ 34, 48.) Community liaisons were allegedly
directed to take gifts and meals to facilities where there were
"service failures" but not to document the gifts in their daily
reports. (Id. ¶¶ 45-47.) Plaintiff-Relators also describe
incidents where Defendant's practices resulted in billing
irregularities discovered by its partner facilities. (Id. ¶¶ 35,
37, 38, 51, 52, 54.) Certain facilities were paid to correct
billing errors while others allegedly decided to leave
Defendant's network because of billing issues. (Id.)

Plaintiff-Relators filed the instant qui tam action for
violation of the FCA on behalf of the United States in 2008 in
camera and under seal in accordance with 31 U.S.C. § 3730(b) and
amended their complaint in 2013 to add state law claims under
New Jersey's FCA. [Docket Items 1, 12.] After nearly seven years
investigating Plaintiff-Relators' claims, the United States
elected not to intervene in the action. [Docket Item 15.] A
redacted copy of the First Amended Qui Tam Complaint was
thereafter served upon Defendant on July 29, 2015. [Docket Item
16.] Defendant filed a motion to dismiss [Docket Item 27.]
Plaintiff-Relators filed an opposition [Docket Item 33] and
Defendant filed a reply. [Docket Item 39.] Plaintiff-Relators

4

requested and were granted leave to file a sur-reply. [Docket Items 40, 41, 42.] The United States thereafter filed a statement of interest, without moving to intervene in the case, pursuant to 28 U.S.C. § 517. [Docket Item 43.] Defendant was granted leave to file a response to the Government's statement. [Docket Item 46.]

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).

A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). A plaintiff must plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556,

and "[a] pleading that offers labels and conclusions or a
formulaic recitation of the elements of a cause of action will
not do." Iqbal, 556 U.S. at 678.

In the present case, Rule 9(b) of the Fed. R. Civ. P.
requires particularized pleading for the conduct underlying
fraud claims, including those under the False Claims Act. Foglia
v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 155 (3d Cir. 2014).
Under Rule 9(b), the "circumstances" of the alleged fraud must
be pled with enough specificity to "place defendants on notice
of the precise misconduct with which they are charged." Seville
Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791
(3d Cir. 1984). Usually this requires "all of the essential
factual background that would accompany the first paragraph of
any newspaper story – that is, the who, what, when, where and
how of the events at issue" or some "alternative means of
injecting precision and some measure of substantiation into
their allegations of fraud." In re Rockefeller Center
Properties, Inc. Securities Litig., 311 F.3d 198, 216-17 (3d
Cir. 2002) (citations omitted). "Malice, intent, knowledge, and
other conditions of a person's mind may be alleged generally."
Fed. R. Civ. P. 9(b). In the FCA context, this requires a
Plaintiff-Relator to allege "particular details of a scheme to
submit false claims paired with reliable indicia that lead to a

strong inference that claims were actually submitted." Foglia, 754 F.3d at 156.

## IV.  DISCUSSION

Under the FCA, private individuals can bring qui tam actions on behalf of the government in exchange for their right to retain some portion of any resulting damages award. 31 U.S.C. § 3729 et seq.; United States ex rel. Wilkins v. United Health Care Group, Inc., 659 F.3d 295 (3d Cir. 2011). To establish a prima facie violation of the FCA, a Plaintiff-Relator "must prove that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." Wilkins, 659 F.3d at 305 (citing United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004)).

Liability may attach under the FCA on two different theories: the presentment of factually false claims and the presentment of legally false claims. Id. (citing United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008)). "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for

Government payment." Id. Legally false claims may be either express, where the claimant falsely certifies that it is in compliance with regulations, or implied, where the claimant "seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." Id.[2]

Defendant argues that the First Amended Complaint must be dismissed because the Plaintiff-Relators have failed to state a claim upon which relief can be granted. First, Defendant contends that the Plaintiff-Relators' claims under the FCA fail as a matter of law because they have alleged neither factually false nor legally false claims. (Def. Br. at 12-14.) Next, Defendant argues that the Plaintiff-Relators' allegations fail to satisfy Rule 9(b) because they fail to describe a "plausible or particular scheme to submit false claims" consisting of inappropriate admissions, altered documentation, and conduct that violates the Stark Rule and Anti-Kickback Statute. (Def. Br. at 14-19.) Finally, Defendant argues that the same

---

[2] The Supreme Court recently granted a writ of certiorari in Universal Health Servs. v. United States ex rel. Escobar, No. 15-7 (U.S., cert. granted Dec. 4, 2015), on the questions of (1) the viability of the "implied certification" theory of falsity under the FCA and (2) whether a statute, regulation, or contractual provision must expressly state that it is a condition of payment in order to give rise to a false claim. Nonetheless, implied certification remains a viable theory of FCA liability in the Third Circuit for the time being. Wilkins, 659 F.3d at 306.

deficiencies that plague Plaintiff-Relators' claims under the federal FCA apply to their claims under the NJFCA and that both claims should be dismissed with prejudice. For the following reasons, the Court will grant in part and deny in part Defendant's motion to dismiss.

### A. Compliance with a rule or statute as a condition for payment

First, Defendant argues that the First Amended Complaint must be dismissed because Plaintiff-Relators allege no cognizable theory of fraud under the FCA on either a factually or legally false theory. Defendant contends that complaint fails to present factually false claims, because it never identifies bills submitted on behalf of patients who were not certified as terminally ill, nor does it present legally false claims, because the complaint does not identify a rule or regulation Defendant violated that was a "condition of government payment" as opposed to a "condition of participation." (Def. Br. at 9-12.) In response, the Plaintiff-Relators argue that the Medicare statute and accompanying regulations regarding eligible patient certification impose such conditions on payment for services. (Pl. Opp. at 21.)[3]

---

[3] Plaintiff-Relators do not challenge Defendant's argument that the complaint fails to state a claim under a factually false claim theory. Accordingly, the Court will review the First Amended Complaint for only legally false claims. The First Amended Complaint does not allege any grounds for a claim that

As a threshold matter, Defendant contends that Plaintiff-Relators have not identified in the First Amended Complaint any statute under which noncompliance could give rise to FCA liability. (Def. Br. at 12-13.) Nowhere in the First Amended Complaint is there a citation to a particular statute or regulation with which Defendant failed to comply, nor is there a particular statute or regulation included among the voluminous exhibits appended to the complaint. Plaintiff-Relators concede as such. (Pl. Opp. at 5 n 6.) Nonetheless, Plaintiff-Relators contend that they have adequately plead the existence of a rule or regulation for two reasons: first, because the "Hospice Eligibility Guidelines" are explicitly relied upon in the complaint (See Am. Compl. ¶¶ 10-14), and second, because they were left out "through an oversight" but attached to the Original Complaint. (Pl. Opp. at 5 n 6; Compl. Ex. A.) Because the Medicare statute at 42 U.S.C. § 1395 et seq. and the Medicare hospice guidelines at 42 C.F.R. § 418 et seq. form the crux of Plaintiff-Relators' allegations, are referenced by name if not title throughout the First Amended Complaint, and are all publicly available, the Court will consider them incorporated by reference.

_____

the care was not provided, but the focus instead is upon the submission of claims for care provided to knowingly ineligible patients.

10

Next, Defendants argue that, even if considered adequately plead in the First Amended Complaint, none of these rules and regulations impose a "condition of payment" on hospice providers as opposed to a "condition of participation" in Medicare's programs. (Def. Br. at 13-15.) Plaintiff-Relators and the United States take the position that these rules are conditions of payment because "[t]he Medicare statute clearly conditions payment to a hospice on verification that hospice care is reasonable and necessary." (Pl. Opp. at 21; see also U.S. Statement at 2-4.) In order to be actionable fraud under the FCA on a "false certification theory, either express or implied, a plaintiff must show that compliance with the regulation which the defendant allegedly violated was a condition of payment from the Government." Wilkins, 659 F.3d at 309. The Third Circuit distinguishes between conditions of payment and conditions of participation based on the repercussions for noncompliance: conditions of payment result in refusal of payment, while conditions of participation result in administrative sanctions. Id. (citing United States ex rel. Conner v. Salina Regional Health Center, Inc., 543 F.3d 1211, 1219-20 (10th Cir. 2008)).

The Third Circuit has held that compliance with the Anti-Kickback Statute is a condition of payment under the Medicare program, United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 243 (3d Cir. 2004), but has yet to address whether the

hospice certification provisions of the Medicare statute and regulations are conditions of payment or participation in the FCA context. This Court finds that they are conditions of payment. Defendant is correct that the regulations Plaintiff-Relators attached as Exhibit A to their Original Complaint call themselves "The Medicare Conditions of Participation for Hospice Care," but ignores the fact that the Medicare statute explicitly conditions payment for hospice care on a written certification from a medical professional accompanied by supporting clinical documentation. See 42 U.S.C. § 1395f(a)[4]; 42 U.S.C. § 1395y(a)(1)(c)[5]; see also United States v. Kolodesh, 787 F.3d 224, 230 (3d Cir. 2015) ("Medicare provides reimbursement only for hospice patients certified as terminally ill.").

The accompanying regulations further detail requirements with which those certifications "must conform" or the hospice

---

[4] "Requirements of requests and certifications. [P]ayment for services furnished an individual may be made only to providers of services which are eligible . . . and only if— (7) in the case of hospice care provided an individual . . . the individual's attending physician . . . and the medical director (or physician member of the interdisciplinary group . . .) of the hospice program providing (or arranging for) the care, each certify in writing at the beginning of the period, that the individual is terminally ill . . . based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness." 42 U.S.C. § 1395f(a).

[5] "[N]o payment may be made . . . for any expenses incurred for items or services— (c) in the case of hospice care, which are not reasonable and necessary for the palliation or management of terminal illness." 42 U.S.C. § 1395y(a)(1)(c).

care provider cannot be paid. See 42 C.F.R. § 418.22
("Certification of terminal illness."). In relevant part, the
regulations require that "[c]linical information and other
documentation that support the medical prognosis must accompany
the certification" and that "[t]he physician must include a
brief narrative explanation of the clinical findings that
supports a life expectancy of 6 months or less as part of the
certification and recertification forms." Id. §§ 418.22(b)(2)
and (3). See also United States ex rel. Fowler v. Evercare
Hospice, Inc., Case No. 11-cv-642, 2015 WL 5568614, at *7 (D.
Colo. Sept. 21, 2015) (finding that "the requirement that
physicians' certifications are accompanied by clinical
information and other documentation that support a patient's
prognosis is a condition of payment under applicable Medicare
statutes and regulations.").

     Additionally, the Local Coverage Determinations ("LCD")
referenced throughout Plaintiff-Relators' First Amended
Complaint and appended as Exhibit Y impose further requirements
on hospice care providers before they can be reimbursed. (Am.
Compl. ¶ 25(1)-(15).) The Centers for Medicare & Medicaid
Services ("CMS") contract with private intermediaries, known as
Medicare Administrative Contractors, to reimburse health care
providers the "appropriate payment amount each day for which an
eligible Medicare beneficiary is under the hospice's care." 42

13

C.F.R. § 418.302(d)(1). Medicare Administrative Contractors establish LCDs to "set forth and govern the conditions of coverage and reimbursement under Medicare" in a particular geographic region. United States v. Space Coast Medical Associates, L.L.P., 94 F. Supp. 3d 1250, 1260 (M.D. Fl. 2015); see also United States ex rel. Ryan v. Lederman, Case No. 04-cv-2483, 2014 WL 1910096, at *1 (E.D.N.Y. May 13, 2014) ("Once an [LCD] is adopted by the carrier, it acts as a filter, or screen, to ensure that only claims meeting the [LCD] criteria for medical necessity are paid."). In this case, the relevant LCD describes the symptomatic criteria the Medicare Administrative Contractor uses to evaluate the terminal prognosis of a particular patient and determine whether hospice care is "reasonable and necessary" for that person. (Am. Compl. Ex. Y.) Noncompliance with those criteria imply, by definition, that the Medicare Administrative Contractor, and by extension Medicare, will not reimburse a hospice provider for that care. An LCD can be considered nothing if not a condition of payment.

However, Plaintiff-Relators have not shown that compliance with the regulations regarding the interdisciplinary group meeting (which the First Amended Complaint calls "Interdisciplinary Team Meetings") are a condition of payment rather than a condition of participation. See 42 C.F.R. § 418.68 ("Condition of participation—Interdisciplinary group.") The

14

Court will not consider any claims that Defendant submitted false claims for Medicare reimbursement because it did not comply with the interdisciplinary group meeting requirement, without more, to state a claim for relief can be granted as a matter of law.

In short, then, Plaintiff-Relators can pursue False Claims Act violations under an implied certification theory for violation of the Medicare statute and regulations, including violation of LCD criteria, but not for violation of the regulations regarding interdisciplinary group meetings.

### B. Submission of false claims

Next, Defendant argues that the Plaintiff-Relators' allegations fail to state a claim on which relief can be granted because the First Amended Complaint fails to satisfy Rule 9(b)'s requirement to describe a "plausible or particular scheme to submit false claims" in enough detail. (Def. Br. at 14-19.) In order to state a claim that Defendant violated the FCA, Plaintiff-Relator "must prove that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." Wilkins, 659 F.3d at 305. The First Amended Complaint describes three categories of Defendant's conduct that allegedly resulted in the presentment of false claims for Medicare reimbursement:

15

inappropriate admissions, altered documentation, and conduct that violates the Stark Act and Anti-Kickback Statute. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion to dismiss Plaintiff-Relators' FCA claims.

### 1. Presentment of claims

Defendant argues as a threshold matter that the First Amended Complaint must be dismissed because nowhere do Plaintiff-Relators allege that any false claims for Medicare reimbursement were actually presented to the Government; the essence of an FCA claim is, after all, that the defendant sought payment from the Government for services not properly rendered. In order to do so, Plaintiff-Relators must either show "representative samples" of the alleged fraudulent submissions, or, alternatively, allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Foglia, 754 F.3d at 155-56. The Court finds that the First Amended Complaint presents circumstances which allow the strong inference that claims actually were presented: Plaintiff-Relators allege that "Defendant is a certified Medicare provider and a Medicaid provider, and has been providing hospice services in long-term care and private homes since 1995" and describe how certain hospice services are reimbursable under Medicare's

statute and regulations. (Am. Compl. ¶¶ 2, 10, 11.) Plaintiff-Relators allege that certain patients were admitted to hospice and certified as terminally ill with symptoms falling short of the criteria for each patient's terminal diagnosis, and provide the Court with copies under seal of their respective patient records to show such purported shortcomings in Defendant's recordkeeping. (Id. ¶ 25; Ex. A, B, E, F, J, L, M, N, P.) It is no great leap for the Court to infer that a Medicare provider would submit claims for reimbursement for any of these patients which had been certified as terminally ill, and that these purportedly legally false medical records could have formed the basis of such a claim for reimbursement. The Court is satisfied that at this stage, Plaintiff-Relators have cleared this bar and adequately allege that false claims for payment were submitted to the Government.

### 2. Inappropriate admission and recertification of hospice patients

First, Plaintiff-Relators allege that Defendant inappropriately admitted, recertified for continuing stays, and presented claims for reimbursement for 15 patients who did not meet Medicare's guidelines for hospice eligibility. (Am. Compl. ¶ 25(1)-(15); Ex. A through W.) As described above in Part A, supra, because Plaintiff-Relators do not allege that Defendant presented for reimbursement any factually false claims (i.e.

17

claims for hospice services that were never rendered to any patient), Plaintiff-Relators must proceed on a legally false claim theory, demonstrating that Defendant presented claims for reimbursement that violated the Medicare statute and regulations' conditions of payment. In other words, Plaintiff-Relators must plausibly show that Defendant submitted claims (1) that were false because they did not comply with the Medicare statute and regulations' payment requirements and Defendant failed to alert the Government to its noncompliance, and (2) that Defendant knew were not in compliance with the Medicare statute and regulations' payment requirements. Plaintiff-Relators have sufficiently plead both prongs of this claim.

Plaintiff-Relators have shown, at least at this stage in the litigation, that at least certain of the reimbursements presented on behalf of the 15 identified patients were legally false because of noncompliance with the Medicare statute and regulations. The Medicare statute provides that reimbursement will only be made for hospice care that is "reasonable and necessary for the palliation or management of terminal illness" for patients certified by their attending physician and medical director in writing as "terminally ill . . . based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness." 42 U.S.C. §§ 1395y(a)(1)(C), 1395f(a)(7). That certification should be "based

18

on the physician's or medical director's clinical judgment" and
must include "clinical information and other documentation that
support the medical prognosis." 42 C.F.R. § 418.22(b).

Plaintiff-Relators concede in the First Amended Complaint
that all of the patients identified as inappropriate for hospice
care were certified by their respective doctors as "terminally
ill." (Am. Compl. ¶ 25; Pl. Reply at 13-20.) The First Amended
Complaint gives no indication that these certifications were
against any doctor's clinical judgment nor that any request for
hospice care reimbursement was not accompanied by copies of a
patient's medical records. Nonetheless, even if Defendant has
provided for each patient a certification signed by a physician,
the claim is not reimbursable if the patient's medical record
does not contain clinical information that supports the terminal
prognosis. Accepting as true Plaintiff-Relators' allegations, as
this Court must do, Plaintiff-Relators have alleged that at
least certain of the reimbursements presented on behalf of the
15 identified patients were false because they did not contain
the required "clinical information . . . that support the
medical prognosis" of terminally ill. The First Amended
Complaint describes instances where patients were
inappropriately admitted into hospice who "did not meet
criteria." Where Plaintiff-Relators allege that patients were
admitted and recertified to hospice who did not meet the LCD

19

diagnostic criteria for the particular hospice diagnosis, they allege legally false claims for reimbursement because the claim did not include sufficient clinical facts in the patient's medical records to justify a terminal prognosis and because hospice was presumptively not "reasonable and necessary" for these patients. Defendant's failure to comply with the Medicare statute's requirements in these respects could constitute the submission of a legally false claim in these cases.

In the alternative, Defendant argues that Plaintiff-Relators fail the second prong of the legal falsity analysis because they have not shown that anyone knew that these submitted claims were false. Scienter is a required element of an FCA claim. United States ex rel. Hefner v. Hackensack University Medical Ctr., 495 F.3d 103, 109 (3d Cir. 2007). Rule 9(b) permits that allegations of intent or knowledge in connection with fraud claims may be plead "generally." Fed. R. Civ. P. 9(b).

"Knowingly" under the FCA means that a person "has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). At the very least, Plaintiff-Relators have detailed policies and practices promulgated by Defendant's corporate management in the First Amended Complaint that

20

plausibly suggest management's reckless disregard for the "truth or falsity" of the information contained in the claims for reimbursement from Medicare. Plaintiffs indeed allege that the certifications that triggered reimbursement were based upon knowingly false admission records that had in some cases been altered to give an appearance of eligible patient symptoms or in others, included symptoms that fell short of the LCD's requirements for a terminal prognosis; the submission of a knowingly false certification occurs if the defendant provider knows that the certification is based upon materially false patient admission records, or that the provider acted in reckless disregard of the truth or falsity of the medical conditions that were being certified for the patient's admission into hospice care.

Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff Relators' FCA claims arising out of Defendant's alleged inappropriate admissions.

### 3. Altered documentation

Next, Plaintiff-Relators allege that Defendant submitted false claims for reimbursement by presenting to the Government claims based on altered medical records. Plaintiff-Relators contend that "Defendant has acted in a fraudulent manner by directing its staff as well as its Medical Directors to manipulate and/or change a patient's diagnosis to accommodate

and qualify a patient for certification and recertification that
would otherwise not be liable." (Am. Compl. ¶ 12; see also ¶¶
18, 22, 26, 27, 28.) The First Amended Complaint's allegations
are plainly insufficient under Rule 9(b). Nowhere in the
complaint do details about the "who, what, when, where and how
of the events at issue" appear, nor do Plaintiff-Relators use
"alternative means of injecting precision and some measure of
substantiation into their allegations of fraud." Rockefeller
Center Properties, 311 F.3d at 216-17. Plaintiff-Relators merely
aver that "[s]taff was requested" to change patient records,
that a consultant asked staff to recreate missing documentation
in advance of an audit, and that she "instructed professional
[sic] to re-write the documents in order to support diagnosis."
(Am. Compl. ¶¶ 26, 27.) These statements provide Defendant with
virtually no notice of its alleged wrongdoing: when the
statements were made, by whom and to whom, or which patients'
records were altered and how. At minimum, the plaintiff must
"identify the speaker of the allegedly fraudulent statements."
United States ex rel. Lampkin v. Johnson & Johnson, Inc., Case
No. 08-5362, 2013 WL 2404238, at *4 (D.N.J. May 31, 2013)
(citing Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345
(3d Cir. 1999)). Accordingly, the Court will dismiss Plaintiff-
Relators' FCA claims arising out of Defendant's alleged altered
documentation. The dismissal will be without prejudice to

Plaintiff-Relators' right to seek leave to file a Second Amended Complaint to cure these deficiencies.

### 4. Anti-Kickback Statute

Finally, Plaintiff-Relators allege that Defendant presented false claims for reimbursement when it implicitly certified that it was in compliance with "[f]ederal laws and regulations designed to prevent or ameliorate fraud, waste, and abuse," 42 C.F.R. § 422.504, while at the same time it violated the Anti-Kickback Statute ("AKS") by inducing referrals.[6] The AKS criminalizes the willful offer or receipt of "any kickback, bribe, or rebate" in return for referring patients under federal health care programs, including Medicare. 42 U.S.C. § 1320a-7b(b). As described above, the AKS is a condition of payment for

---

[6] Plaintiff-Relators additionally plead violations of the Stark Act, 42 U.S.C. § 1395nn, but do not challenge Defendant's contention that hospice services are not covered by the Act. (Def. Br. at 19-21.) As a matter of law, the Stark Act applies only to "designated health services," which are limited to the following: "(a) Clinical laboratory services. (b) Physical therapy services. (c) Occupational therapy services. (d) Radiology services . . . (e) Radiation therapy services and supplies. (f) Durable medical equipment and supplies. (g) Parenteral and enteral nutrients, equipment, and supplies. (h) Prosthetics, orthotics, and prosthetic devices and supports. (i) Home health services. (j) Outpatient prescription drugs. (k) Inpatient and outpatient hospital services. (l) Outpatient speech-language pathology services." 42 U.S.C. § 1395nn(h)(6). Because hospice care is not subject to the Stark Act, Plaintiff-Relators' allegations arising under the Act fail as a matter of law.

Medicare programs, so its violation can support an FCA claim under an implied legally false theory.

Plaintiff-Relators allege that "gifts, lunches, dinners, additional staff, and other designed [sic] perks were offered to physicians, administrators, director of nurses, social workers, who could supply referrals." (Am. Compl. ¶ 43.) According to Plaintiff-Relators, Community Liaisons were instructed not to write about gifts in their daily reports. (Id. ¶ 46.) Plaintiff-Relators further allege instances of "billing irregularities" with partner facilities and that "[l]iaisons would often have to resolve public relations issues with facilities due to improper billing of Medicare as a result of a change in the patient's level of care." (Id. ¶¶ 51, 52, 54.)  These allegations do not provide the Court with enough particularity under Rule 9(b) to allow the Amended Complaint to proceed. Plaintiff-Relators' averrals fail to detail at least examples of what gifts, meals, and other perks were offered by whom, to whom, and when. More troubling here is that the AKS includes a safe harbor exceptions for certain payment and business practices that are not treated offenses under the statute. See 42 C.F.R. § 1001.952 (Exceptions). Defendant is given inadequate notice of its allegedly unlawful conduct, leaving it no opportunity to defend against these claims on the ground that any gifts or perks offered might not be prohibited. Accordingly, the Court will

24

dismiss Plaintiff-Relators' False Claims Act claims arising out of Defendant's alleged violations of the AKS. Such dismissal will be without prejudice to Plaintiff-Relators' right to seek leave to file a Second Amended Complaint to cure these deficiencies.

### C. State law claim

Plaintiff-Relators allege in Count II of the First Amended Complaint that the same conduct that allegedly violates the federal False Claims Act also violates New Jersey's analog, the NJFCA, codified at N.J.S.A. § 2A:32C-1 et seq. The NJFCA became effective on March 18, 2008, only one month before Plaintiff-Relators initiated this action, and does not apply retroactively. State ex rel. Hayling v. Correctional Medical Servs., 28 A.3d 1246, 1250 (N.J. App. Div. 2011). Plaintiff-Relators' claims under state law are deficient under Rule 9(b) because the First Amended Complaint provides no representative samples of purportedly fraudulent conduct that occurred after the statute's effective date. Defendant should not have to defend conduct that was not actionable when it occurred. Accordingly, the Court will dismiss Plaintiff-Relators' NJFCA claims, without prejudice to Plaintiff-Relators' right to seek

leave to file a Second Amended Complaint to cure these deficiencies.[7]

### D. Dismissing with prejudice

Finally, Defendant asks this Court to dismiss Plaintiff-Relators' First Amended Complaint with prejudice. A court may deny leave to amend a complaint where it is apparent that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." United States ex rel. Schumann v. Astrazeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014)(citing Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000). Defendant contends that Plaintiff-Relators have exhibited all three; Plaintiff-Relators fail to respond. Because "the court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), the Court will not grant Defendant's motion unopposed. Instead, the Court will grant Defendant's request in part and deny in part, as follows.

First, the Court cannot say that Plaintiff-Relators have demonstrated undue delay. Plaintiff-Relators could take no action while the Government investigated their claims while

---

[7] Accordingly, the Court will not reach whether Plaintiff-Relators met the NJFCA's filing requirements, N.J.S.A. § 2A:32C-5 or whether exercising supplemental jurisdiction would be appropriate in this case. Defendant may raise these arguments again on a subsequent motion to dismiss should Plaintiff-Relators amend their state law claim.

their claim was pending under seal from 2008-2015. Moreover, the
Court cannot say that amendment would be futile for most of
Plaintiff-Relators' claims. The Court will not assume at this
juncture that Plaintiff-Relators cannot include new facts in a
Second Amended Complaint with respect to their claims alleging
altered documentation and violations of the AKS merely because
they were not sufficiently plead the first time. Their failure
to include new factual allegations in their First Amended
Complaint, as opposed to only the new legal allegations raised
under state law, should not be held against them if they had no
notice, until now, that their complaint was deficient, where the
deficiencies may be readily curable. Schumann, 769 F.3d at 849
(citing Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140,
144 (3d Cir. 2002) (finding that dismissal with prejudice was
warranted where plaintiff had notice of deficiencies in his
complaint because of other defendants' motions to dismiss and
where plaintiff had opportunity to cure because he had
previously filed five iterations of the complaint). Finally, the
Court disagrees that allowing Plaintiff-Relators the opportunity
to amend their complaint will unduly prejudice Defendant.
"Prejudice includes the irretrievable loss of evidence, the
inevitable dimming of witnesses' memories, or the excessive and
possibly irremediable burdens or costs imposed on the imposing
party." Briscoe v. Klaus, 538 F.3d 252, 259 (3d Cir. 2008).

27

Defendant has not shown how permitting Plaintiff-Relators even one additional chance to correct their pleadings will harm it. Defendant is correct that the case has been "pending" for more than seven years, but, given the unusual procedures of delay pending governmental investigation under the False Claims Act, Defendant has not incurred costs defending it during that time period. "Incidental prejudice and delay are insufficient grounds on which to deny leave to amend." In re Caterpillar Inc., 67 F. Supp. 3d 663, 668 (D.N.J. 2014).

However, the Court finds that dismissal with prejudice is warranted only with respect to Plaintiff-Relators' claims alleging violations of the Stark Act and alleging noncompliance with the interdisciplinary group meeting requirement, which would be futile because they do not state a claim for which relief can be granted as a matter of law.

Accordingly, the Court will dismiss Stark Act claims and interdisciplinary group meeting requirement claims with prejudice, and dismiss Plaintiff-Relators' claims regarding altered documentation and violations of the AKS arising under an implied legally false theory under the FCA and the NJFCA without prejudice and with leave to amend. Plaintiff-Relators' claims regarding inappropriate patient admissions and recertifications for hospice care will not be dismissed.

**V.    CONCLUSION**

In light of the foregoing, the Court will grant in part and deny in part Defendant Care Alternative's motion to dismiss the First Amended Complaint. An accompanying Order will be entered.


**February 22, 2016**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge