**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

VICTORIA DRUDING, et al.,          1:08-cv-2126-NLH-AMD

              Plaintiffs,          **OPINION**

      v.

  CARE ALTERNATIVES,

              Defendant.

_____

**APPEARANCES:**

REGINA D. POSERINA
MAR. M. ORLOW
ROSS BEGELMAN
BEGELMAN & ORLOW, P.C.
411 ROUTE 70 EAST, SUITE 245
CHERRY HILL, NEW JERSEY 08034

SHERRIE R. SAVETT, pro hac vice
RUSSELL D. PAUL
BERGER & MONTAGUE, P.C.
1622 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19103

      _On behalf of Plaintiffs_

STEVEN PENARO
ALSTON & BIRD LLP
90 PARK AVENUE
NEW YORK, NEW YORK 10016

WILLIAM H. JORDAN, pro hac vice
JASON D. POPP, pro hac vice
ALSTON & BIRD LLP
1201 WEST PEACHTREE STREET
ATLANTA, GEORGIA 30309

      _On behalf of Defendant_

**HILLMAN**, District Judge,

This matter has come before the Court on Plaintiffs' Motion to Stay and to Review the Clerk's Order Granting in Part and Denying in Part Defendant Care Alternatives' Bill of Costs. (Docket Item 218.) For the reasons expressed below, Plaintiffs' Motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiffs in this case are four former employees of Defendant who initially brought this <u>qui tam</u> action on behalf of the United States on April 29, 2008. (Docket Item 1.) They alleged fraud related to the submission of false claims for hospice services, in violation of the False Claims Act ("FCA"), 31 <u>U.S.C.</u> § 3729 et seq. (<u>See</u> Docket Item 1.) After a stay, a terminated notice of call for dismissal, and several extensions, the United States declined intervention on July 21, 2015. (<u>See</u> Docket Items 5-9, 11, 15.)

Also during that years-long period, Plaintiffs filed their First Amended Qui Tam Complaint, which added a second claim under the New Jersey False Claims Act, 2A:32C-1 et seq. (Docket Items 12.) On July 29, 2015, Defendant was served a redacted copy of that complaint. (Docket Item 16.) Defendant filed a Motion to Dismiss on September 25, 2015. (Docket Item 27.) The late Honorable Jerome B. Simandle granted that Motion in part

and denied it in part on February 22, 2016. (Docket Item 48.)
This left only the allegations of inappropriate patient
admissions and re-certifications for hospice care in violation
of the FCA. (Docket Item 49.)

After a period of discovery disputes, Defendant filed both
a second Motion to Dismiss (Docket Item 126) and a Motion for
Summary Judgment (Docket Item 128) on September 8, 2017. Soon
thereafter, the United States docketed a Statement of Interest.
(Docket Item 153.) On September 26, 2018, the Court issued an
Order denying the second Motion to Dismiss but granting summary
judgment in Defendant's favor because Plaintiffs failed to
present evidence of "objective falsehoods" or knowingly false
certifications. (Docket Item 194.) Plaintiffs timely appealed
that Order to the Third Circuit Court of Appeals on October 15,
2018. (Docket Item 196). That appeal is still pending.

Meanwhile, Defendant filed a Motion for Attorney's Fees on
October 29, 2018 (Docket Item 199), which the Court denied on
January 28, 2019 (Docket Item 216). Defendant also filed a
Motion for Bill of Costs on October 29, 2018. (Docket Item
198.) Plaintiffs opposed that Motion. (Docket Item 204.) The
Clerk issued an Order on April 2, 2019, which granted
Defendant's Motion for Bill of Costs in part and denied the same
in part. (Docket Item 217.) Ultimately, the Clerk awarded

Defendant $11,039.35 in costs. (Id. at 18.) Plaintiffs then
filed the present Motion to Stay and Review that Order on April
9, 2019. (Docket Item 218). Defendant opposed that Motion.
(Docket Item 220.) Plaintiffs filed a timely reply. (Docket
Item 221.)

## JURISDICTION

The Court exercises subject-matter jurisdiction over this
action pursuant to 28 U.S.C. § 1331 because the claim arises
under the laws of the United States. Specifically, Plaintiffs
allege violations of the False Claims Act, 31 U.S.C. § 3729 et
seq. The issue of the propriety of a stay aside, the Court
retains jurisdiction to address the issues of costs although the
Court's Order granting the Defendant's Motion for Summary
Judgment is on appeal. See Mary Ann Pensiero v. Lingle, 847
F.2d 90, 97 (3d Cir. 1988) ("The district court retains
jurisdiction [when an appeal has been filed], for example, to
issue orders staying, modifying or granting injunctions, to
direct the filing of supersedeas bonds, and to issue orders
affecting the record on appeal, the granting of bail, and
matters of a similar nature.")

## DISCUSSION

Plaintiffs make several arguments in support of their
Motion. First, Plaintiffs argue that Defendant's application to

tax costs must be stayed pending the outcome of Plaintiffs'

appeal of the Court's decision to grant summary judgment in

favor of Defendant.  Second, Plaintiffs argue that the FCA

preempts Rule 54 of the Federal Rules of Civil Procedure and

Rule 54.1 of the Local Civil Rules, thereby requiring the Court

to vacate the Clerk's Order and deny Defendant's Motion for Bill

of Costs.  Third, Plaintiffs argue that Defendant failed to

submit precise costs and therefore "waives its right to taxable

costs." (Docket Item 218-2, at 13-14.)  The Court will address

these issues in turn.

> **A.** **Should the Court Stay Defendant's Motion for Bill of Costs Pending Plaintiffs' Appeal of the Court's Earlier Decision to Grant Summary Judgment in Favor of Defendant?**

The Court will first address Plaintiffs' argument that the

Court should stay Defendant's Motion for Bill of Costs pending

Plaintiffs' appeal of the Court's earlier decision to grant

summary judgment in favor of Defendant.

Whether a court will issue a stay is a question of judicial

discretion that depends on the circumstances of the case before

the court.  See Nken v. Holder, 556 U.S. 418, 433-34 (2009).

"The party requesting a stay bears the burden of showing that

the circumstances justify an exercise of that discretion."  Id.

A court will be guided by four factors:

> (1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured
absent a stay; (3) whether issuance of the stay will
substantially injure the other parties interested in
the proceeding; and (4) where the public interest
lies.

Id. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770, 776

(1987)). The first two factors are "most critical" and must be

met by the movant as a threshold matter before a court can grant

a stay. See Reilly, 858 F.3d at 179 (quoting Nken, 556 U.S. at

434). Thus, the movant "must demonstrate that it can win on the

merits (which requires a showing significantly better than

negligible but not necessarily more likely than not) and that it

is more likely than not to suffer irreparable harm in the

absence of preliminary relief." Id. Only once the movant has

shown those two things may the court consider the remaining two

factors and decide whether a stay is warranted. Id.

     "To establish irreparable harm, a stay movant 'must

demonstrate an injury that is neither remote nor speculative,

but actual and imminent.' 'The possibility that adequate

compensatory or other corrective relief will be available at a

later date, in the ordinary course of litigation, weighs heavily

against a claim of irreparable harm.'" In re. Revel Inc., 802

F.3d 558, 571 (3d Cir. 2015) (citations omitted) (first quoting

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975

(2d Cir. 1989); and then quoting Sampson v. Murray, 415 U.S. 61,

90 (1974)).  The Third Circuit has "long held that an injury measured in solely monetary terms cannot constitute irreparable harm."  Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

In the case at hand, Plaintiffs argue that they will suffer irreparable harm if the Court does not stay Defendant's Motion. They only harm that Plaintiffs allege, however, is monetary: that each of the four plaintiffs would be required to pay approximately $3,000 if the Court were to uphold the Clerk's Order.  Because this harm is solely monetary, it cannot constitute irreparable harm under Third Circuit precedent.

Regardless of Plaintiffs' likelihood of success in their appeal, their failure to show irreparable harm precludes this Court from staying Defendant's Motion for Bill of Costs. Therefore, the Court will not consider Plaintiffs' likelihood of success on appeal, and will deny Plaintiffs' Motion to Stay Defendant's Motion for Bill of Costs.

However, the Court also recognizes that, in the interest of practicality, it is desirable to limit the number of times that money exchanges hands between the parties as a result of the analysis below.  The Court wishes to avoid, for instance, a scenario in which Plaintiffs first pay Defendant in accordance with this decision, the Third Circuit then rules in Plaintiffs'

favor on appeal, and Defendant finally has to return the money to Plaintiffs.  The 2018 Amendments to Rule 62(a) of the Federal Rules of Civil Procedure provides a means by which the Court can do just that: "[E]xecution on a judgment and proceedings to enforce it are [automatically] stayed for 30 days after its entry, <u>unless the court orders otherwise</u>."  <u>See</u> <u>also</u> 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2902 (3d ed. 2019) ("Amendments to Rule 62(a) in 2018 now expressly recognize the court's authority to extend an automatic stay as well as to dissolve it, by providing that the stay is automatic, 'unless the court orders otherwise.'" (quoting FED. R. CIV. P. 62(a) (2018))).  Thus, the Court will extend the automatic stay of the execution on today's Judgment until such time as Plaintiffs' pending appeal has been decided.

### B.  Should the Court Vacate the Clerk's Order in Favor of Defendant in the Amount of $11,039.35?

Although it will stay execution of its decision on costs pending the resolution of Plaintiffs' appeal, the Court will now reach the question of whether it should vacate the Clerk's April 2, 2019 Order granting costs in the amount of $11,039.35 in favor of Defendant.

#### 1.  Standard of review

Rule 54(d) of the Federal Rules of Civil Procedure states that "[u]nless a federal statute, these rules, or a court order

8

provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party. . . . The Clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action." Likewise, Rule 54.1(h) of the Local Civil Rules states that a "dissatisfied party may appeal to the Court upon written notice of motion served within seven days of the Clerk's action, as provided in FED. R. CIV. P. 54(d)(1)."

If a party timely appeals the clerk's award, the district court will review the award de novo. Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (citing In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 461 (3d Cir. 2000)). However, the court has the obligation to clearly articulate its reasoning for a denial or reduction of costs, since doing so "is akin to a penalty." Id. The prevailing party enjoys a "strong presumption" in favor of an award of costs, and such presumption can be overcome by a showing of inequity. Id. The court, unlike the clerk, can consider equitable factors in making its decision, such as "the prevailing party's unclean hands, bad faith, or dilatory tactics; the losing party's good faith and closeness of issues; disparity in wealth of the parties; and the losing party's inability to pay." Kenny v. Denbo, Civ. No. 16-8578, 2017 U.S. Dist. LEXIS 151771, at *3 (D.N.J. Sept. 19,

2017) (citing <u>In re Paoli</u>, 221 F.3d at 462).

The Court will employ the above standard in determining whether Defendant should receive costs in the amount calculated in the Clerk's Order.

### 2. Does the FCA preempt Rule 54 of the Federal Rules of Civil Procedure and Rule 54.1 of the Local Civil Rules?

Plaintiffs' first substantive argument is that the False Claims Act preempts Rule 54 of the Federal Rules of Civil Procedure ("Rule 54") and Rule 54.1 of the Local Civil Rules ("Rule 54.1"). This, Plaintiffs argue, moots Defendant's right to taxable costs.

In making this argument, Plaintiffs first point out that Rule 54(d) states in part that, "[u]nless a federal statute . . . provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." They then argue that the FCA "provides otherwise," and therefore dictates whether Defendant is entitled to costs. The basis for this argument comes from the fee-shifting provision of the FCA, which reads:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4).

In other words, there are two requirements for a defendant in a <u>qui</u> <u>tam</u> case such as this one to recover "reasonable attorneys' fees and expenses." First, the defendant must prevail. Second, the court must find that the plaintiff-relator's claim "was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." It is undisputed that Plaintiffs' action was not "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." (<u>See</u> Docket Item 215, at 4-9.) Therefore, Defendant cannot recover "reasonable attorneys' fees and expenses" in this case.

The core of the issue, then, is whether "reasonable attorneys' fees and expenses," as described in the FCA, includes "costs," as described in Rule 54. If "costs" are a subset of "reasonable attorneys' fees and expenses," then the FCA will apply and Defendant will not be entitled to costs for lack of showing that Plaintiffs' action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment. Conversely, if "costs" are not a subset of "reasonable attorneys' fees and expenses," then Rule 54 will apply and Defendant will be entitled to costs.

Plaintiffs contend that the FCA's language must be interpreted as being inclusive of "costs" because of the purpose

behind the FCA.  They argue that the FCA "encourage[s]
whistleblowers to file suits, encourage[s] relators to proceed
on declined cases, and encourage[s] pursuit of fraud on the
Government."  (Docket Item 218-2, at 8.)  Congress thus wrote
the FCA "expansively . . . to reach all types of fraud, without
qualification, that might result in financial loss to the
Government."  Cook Cty. V. United States ex rel. Chandler, 538
U.S. 119, 129 (2003).  With that backdrop in mind, Plaintiffs
argue that "the draconian punishment of taxable costs" could not
possibly be permitted by the FCA, absent a showing of
harassment, frivolity, or vexation.  (Docket Item 218-2, at 8-
9.)  Plaintiffs allege that "overwhelming caselaw" also supports
this proposition, but cite only one case — and that case they
cite solely for the proposition that a qui tam plaintiff who
prevails is entitled to "attorney's fees and costs" under an
entirely different section of the FCA.  See Vt. Agency of Nat.
Res. v. United States ex rel. Stevens, 529 U.S. 765, 769-70
(2000) (citing 31 U.S.C. §§ 3730(d)(1)-(2)).

     Instead, Plaintiffs rely on several other arguments.
First, they note that no case exists in the Third Circuit of a
party to an FCA case being awarded both fees and expenses.
Next, they argue that Defendant's Motion is a nefarious attempt
to get around the FCA's high bar for awarding costs, which

Defendant knows it cannot meet.  Then, Plaintiffs argue that allowing for costs would have a chilling effect on whistleblowers.  They then note that, per another subsection of the FCA that applies when the United States is a plaintiff, a prevailing defendant must obtain its taxable costs via 28 U.S.C. § 1920, separate from other costs, which are obtained via 28 U.S.C. § 2412.  Plaintiffs make all of these arguments without citing a single authority other than the statutory language itself and the <u>Vermont Agency of Natural Resources</u> case.

While it is true that the Third Circuit has not yet addressed squarely the issue before this Court, other Circuits have explained compellingly why Plaintiffs' argument is untenable.  In <u>Associates Against Outlier Fraud v. Huron Consulting Group, Inc.</u>, the Second Circuit addressed this very issue.  817 F.3d 433 (2d Cir. 2016).  The plaintiff in that case similarly argued that "'expenses' (as referred to in § 3730(d)(4)) include the 'costs' referred to in FED. R. CIV. P. 54(d)(1)."  <u>Id.</u> at 436.

The Second Circuit was not convinced.  It noted that "the distinction between 'costs' and 'expenses' is well established in the Federal Rules of Civil Procedure[:] 'Taxable costs are limited to relatively minor, incidental expenses,' while 'nontaxable expenses [are those] borne by litigants for their

attorneys, experts, consultants, and investigators.'" Id.
(quoting Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997,
2006 (2012)). The Court then noted that "[t]his distinction
between costs and expenses is no less clear in the FCA." Id. at
437. For instance, the Court explained, "§ 3730(g) of the FCA
incorporates 28 U.S.C. § 2412(d), which distinguishes between
'fees and other expenses' and those 'costs' enumerated in 28
U.S.C. § 1920." Id. Moreover, § 3730(d)(2), which contemplates
a successful qui tam FCA action, distinguishes each of
"expenses, [attorneys'] fees, and costs."

The Second Circuit noted that, "by arguing that Congress
used the terms interchangeably, [the plaintiff] in effect asks
this Court to read the terms inconsistently across the FCA."
Id. The Court refused to do that, concluding that because
"'costs' and 'expenses' have distinct meanings under Federal
Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and the FCA, 31
U.S.C. § 3730(d)(4) does not preclude the award of the costs for
deposition transcripts." Id.

The Second Circuit's ruling aligned with three other
Circuits' rulings on the same issue. See United States ex rel.
Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1172 (10th Cir.
2009) ("Section 3730(d)(4) does not govern the recovery of costs
by a prevailing defendant . . . ."); United States ex rel.

Costner v. United States, 317 F.3d 889, 891 (8th Cir. 2003)

("[Section] 3730(d)(4) is not an express provision regarding

costs and thus does not displace the district court's authority

to award costs under Rule 54."); United States ex rel.

Lindenthal v. Gen. Dynamics Corp., 61 F.3d 1402, 1414 (9th Cir.

1995) (holding that "expenses" does not include "costs" under

the FCA because "section 3730(d)(4) does not constitute an

express provision regarding costs").  No Circuit has come to the

opposite conclusion.

This Court finds that the Second Circuit's analysis, while

not binding on this Court, is compelling.  Plaintiffs' position

does not comport with the plain meaning of § 3730(d)(4).

Moreover, Plaintiffs' various musings about the issue —

supported by scant authority — do little to persuade this Court.

"Costs" is not a subset of the FCA's phrase "reasonable

attorneys' fees and expenses."  Thus, Rule 54 applies here, and

Defendant is not precluded from being awarded costs on that

basis.

### 3. Did Defendant fail to submit precise costs such that it waived its right to taxable costs?

Having determined that awarding costs in this case is not

prohibited by the FCA, the Court will now turn to what amount of

costs, if any, should be awarded to Defendant.  In making this

decision, the Court is bound by 28 U.S.C. § 1920, which in

relevant part permits costs to be awarded for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(2), (4); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

Furthermore, the Court is guided by Local Rule 54.1(b), which provides that

> Bill of Costs shall precisely set forth each item thereof, so that the nature of the charge can be readily understood, and shall be verified by the attorney for the applicant, stating that (1) the items are correct, (2) the services were actually and necessarily performed, and (3) the disbursements were necessarily incurred in the action or proceeding.

Local Rule 54.1(e) states that if the prevailing party fails to comply with the rest of Local Rule 54.1, then "all costs shall be waived."

Plaintiffs argue that the Clerk's award of costs under both § 1920(2) and (4) was improper. The Court will address each argument in turn.

### i. Deposition costs

Plaintiffs first argue that the Clerk's award of deposition costs under § 1920(2) should be vacated. They argue that Defendant's request for deposition costs included "improper

costs," rendering those costs waived.  Specifically, Plaintiffs

say that Defendant's "invoices for each deposition are not

precise, because they fail to break out untaxable costs, and

fail to precisely divide taxable and untaxable costs."  (Docket

Item 218-2, at 14.)

Local Rule 54.1(g)(7) provides only that the costs

associated with the taking and transcribing depositions "used at

the trial" are taxable costs.  However, as noted above, §

1930(2) allows the Court to award costs for any deposition

"necessarily obtained for use in the case."  The Third Circuit

has resolved this apparent contradiction between the rules by

holding that depositions will constitute taxable costs so long

as they are "used in deciding summary judgment motions" or at

trial.  See In re Baby Food Antitrust Litig., 166 F.3d 112, 138

(3d Cir. 1999).

Defendant sought costs for eleven deposition transcripts.

The Clerk held that all eleven were taxable, and Plaintiffs do

not dispute that ruling.  Instead, Plaintiffs take issue with

what they construe as Defendant's failure to differentiate

taxable and non-taxable costs that resulted from the

depositions.  In essence, Plaintiffs argue that the Clerk's

Order properly excluded some non-taxable costs, but not all.

Per the plain language of § 1920(2), the expense of

depositions themselves is a taxable cost.  Moreover, per Local

Rule 54.1(g)(7), the cost of the reporter's attendance is a

taxable cost as a "charge[] incurred in the taking and

transcribing of depositions."  However, per Local Rule

54.1(g)(6), expedition, exhibits, rough drafts, shipping and

handling, and other such expenses are not taxable charges under

§ 1920(2).  Those expenses are for the convenience of the

attorneys and therefore do not fall under the ambit of costs.

See Avaya Inc. v. Telecom Labs, Inc., Civ. No. 1:06-cv-02490,

2016 WL 10590071, at *51-52 (D.N.J. Sept. 15, 2016) (Special

Master's Recommendation) (citing Warner-Chilcott Labs Ir. Ltd.

v. Impax Labs, Inc., Civ. Nos. 08-6304, 09-1233, 09-2073, 2013

WL 1876441, at *2-4 (D.N.J. Apr. 18, 2013) (Clerk's Order)).

Plaintiffs' argument that the Clerk granted Defendant non-

taxable costs seems to stem from the fact that some of

Defendant's deposition invoices are more detailed than others.

Of the eleven depositions, six were reported by Lyn Rubenstein &

Associates, LLC ("Rubenstein") and five were reported by Magna

Legal Services ("Magna").  (See Docket Item 198-3.)

Rubenstein's invoices only list up to three line items with

associated fees: deposition, exhibits, and delivery/handling.

Some of the depositions also have a notation indicating that

they were expedited, but there is no cost specifically

associated with the extra charge for expedition. Conversely, Magna provided much more detailed invoices, which separately list the fees for the deposition itself, rough drafts, exhibits, attendance fees, shipping, and other items.

Plaintiffs allege that these invoices do not adequately separate out taxable costs from non-taxable costs like expedition fees, rough draft fees, fees for ASCII disks, condensed transcripts, word indices, Realtime, med/tech copies, and exhibits. The Court finds this argument unavailing as to the Magna depositions because those invoices are detailed and adequately separate out the different fees. This allows the Court to determine which of those fees are taxable and which are not. The Clerk awarded costs only for the price of those depositions, the reporter attendance fees, and, in one case, a rough draft of the deposition. The rough draft price was awarded because the Clerk found that the rough draft was necessary, as Defendant cited it in one of its filings. The Court agrees with the Clerk's conclusion as to those five depositions. Defendant was rightly awarded $5,500.65 in costs for the Magna depositions.

The Rubenstein invoices are not as clear. The Clerk correctly did not award costs for the exhibit and delivery/handling line items. He focused solely on the fee

associated with the deposition.  Four of those depositions were
not expedited, so the fee associated with just the deposition
line item is the correct amount to award as costs.  That totals
$3,956.00 for the four depositions.

The two remaining depositions — those of Loretta Spoltore
and Martha Susan Coppola — are marked as having been expedited,
but the invoice does not distinguish the cost of the deposition
itself from the added cost of expedition.  The Clerk rightly
found that the cost of expedition was not a taxable cost, but he
also attempted to rectify the fact that the deposition itself
would be taxable under normal circumstances.  To resolve this
problem, the Clerk first estimated the number of pages in those
two depositions by counting "the maximum number of pages he was
able to find from perusing the docket."  (Docket Item 217, at 13
n.1.)  He then multiplied that number by $4.10, Magna's per-page
cost for a non-expedited deposition.[1]  This totaled $1,307.90 for
the Spoltore and Coppola depositions.

While this Court appreciates the Clerk's creative and
admirable efforts, it also finds that they were inappropriate in
this case.  Local Rule 54.1 places the burden on the party

---

[1] The Court notes that these two depositions were reported by
Rubenstein, not Magna.  Rubenstein did not indicate its per-page
fee anywhere in its invoices, so the Clerk simply used Magna's
instead.

seeking costs to "precisely set forth each item" in the Bill of
Costs "so that the nature of the charge can be readily
understood." Here, Defendant failed to meet this burden, and it
is not the responsibility of the Clerk, this Court, or
Plaintiffs to remedy that error. Defendant did not provide any
evidence about the number of pages that the Spoltore and Coppola
depositions were, the per-page fee that Rubenstein charged for a
non-expedited deposition, or the expedition fee that Rubenstein
charged.

In short, Defendant did not meet its burden under Local
Rule 54.1, and the Court will not do the heavy lifting for
Defendant. Any other conclusion would contravene the relevant
Rules of Civil Procedure, reward Defendant despite its failure
to follow the Rules, and punish Plaintiffs despite Defendant's
failures. Therefore, the Court will reduce the Clerk's award by
the cost of the Spoltore and Coppola depositions: $1,307.90.
See Apple Corps. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480,
498 (D.N.J. 1998) (reducing costs by 75% for failing to itemize
properly); Student Pub. Interest Research Grp. V. Monsanto Co.,
721 F. Supp. 604, 623 (D.N.J. 1989) (reducing costs by 90% for
the same reason).

In sum, the Clerk's award of $10,764.55 for the cost of
deposition transcripts pursuant to § 1920(2) will be reduced by

$1,307.90.  The new award under § 1920(2) will be in the amount of $9,456.65.

### ii. Costs of copies and exemplification for electronic discovery

Plaintiffs next argue that the Clerk erred in awarding Defendant $274.80 for the costs of making copies under § 1920(4).  Defendant initially sought $10,392.40 in these costs, but the Clerk did not grant the overwhelming majority of that sum for various reasons.  Defendant sought costs in four categories that it claimed fall under the ambit of § 1920(4): (1) $700.00 for data processing; (2) 274.80 for image printing; (3) $2,203.60 for document production charges; and (4) $7,214.00 for professional services for exemplification and copying.  The Clerk rightly determined that the first, third, and fourth categories did not constitute taxable costs under § 1920(4), and neither party contests that conclusion.  However, Plaintiffs do contest the Clerk's conclusion that the second category — image printing — constitutes a taxable cost.  Namely, Plaintiffs argue that Defendant's "failure to be precise" resulted in its "waive[r of] the right to taxable costs related to copying and exemplification."  (Docket Item 218-2, at 18.)

Only when certain conditions are met will costs associated with copies be taxable.  First, as with transcript costs, the costs of making copies are only taxable under § 1920(4) to the

extent that they were "necessarily obtained for use in the case."  The Clerk found that the six copies at issue in this case met that standard, and the parties do not contest that finding.  Second, only certain specific categories of copying and exemplification are taxable in the Third Circuit.  See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 171 (3d Cir. 2012).  One such category is the cost of converting "native image files" to Tagged Image File Format ("TIFF").  Id. The Clerk found that what Defendant categorized as "Image Printing" in its Motion was, in fact, the cost of converting native image files to TIFF.  Plaintiffs do not contest this finding either.

Rather, the crux of Plaintiffs' argument here is that Defendant only clarified that "Image Printing" meant "conversion to TIFF" in their Reply Brief in support of the Motion for Bill of Costs.  (See Docket Item 209.)  Plaintiffs argue that, again per the Local Rules, Defendant was required to include this precise explanation in the Bill of Costs itself, so it was improper for the Clerk to accept Defendant's last-minute explanation of what "Image Printing" meant.  All Defendant included in its Bill of Costs was (1) the categorization of "Image Printing Costs," (2) the date on which the cost was incurred, and (3) the cost of each item.  (Docket Item 198,

Exhibit B, at 2.)  Therefore, Plaintiffs argue, Defendant waived its right to those costs due to lack of specificity.

Plaintiffs seem to have come to this conclusion because the Clerk's Order cited Defendant's Reply Brief to support the Clerk's assertion that Defendant "has clarified that the cost arose from the process of converting native files to TIFF format."  But that was not the first time that Defendant made that clarification.  In the Declaration of Defendant's counsel Jason Popp that accompanied Defendant's Motion for Bill of Costs, Mr. Popp specifically referred to "converting files to TIFF format" as one type of expense that it was trying to recover.  (Docket Item 198-2, at 1.)

The Court finds that this Declaration, in concert with the Brief in support of the Motion and the Exhibits attached thereto, was sufficient to satisfy the requirement that the Bill of Costs be "precisely set forth . . . so that the nature of the charge can be readily understood."  Defendant will not be penalized for internally using the term "Image Printing Costs" to refer to what the Third Circuit calls "the conversion of native files to TIFF."  As a result, the award of $247.80 under § 1920(4) was not granted in error by the Clerk.

## CONCLUSION

Based on the above analysis, the Court will grant in part

and deny in part Plaintiffs' Motion to Stay and Review (Docket Item 218) the Clerk's April 2, 2019 Order granting Defendant $11,039.35 in costs (Docket Item 217).  Plaintiffs' Motion will be granted insofar as the Court will reduce the amount of costs granted to Defendant from $11,039.35 to $9,731.45.  Furthermore, the Court will stay execution of that Judgment pending the outcome of Plaintiffs' appeal.  In all remaining respects, Plaintiffs' Motion will be denied.


Date: November 13th, 2019          s/Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.